# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ACE HARDWARE CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10 C 2884 |
| | ) | |
| LANDEN HARDWARE, LLC, | ) | |
| MARKETPLACE HARDWARE, LLC, | ) | |
| WILLIAM B. LOVETT, STEVEN D. | ) | |
| MCMAHAN, LINDA LOVETT, and | ) | |
| SANDRA MCMAHAN, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Defendants Landen Hardware and Marketplace Hardware each were Ace Hardware franchisees, and individual defendants William and Linda Lovett and Steven and Sandra McMahan signed guaranties connected with the agreements between Landen and Marketplace and Ace Hardware. After Ace Hardware sued the defendants based on alleged breach of contract and breach of personal guaranties, defendants Landen, Marketplace, and the Lovetts filed a motion to dismiss contending that Ace Hardware's claims must be arbitrated under the parties' agreements.[1] Alternatively, the defendants seek to stay this action pending completion of arbitration of their counterclaims against Ace Hardware.

For the following reasons, the court finds that Ace Hardware's claims against the defendants are not subject to arbitration. Thus, the defendants' motion to dismiss is denied. In addition, because the defendants did not tender a copy of their proposed counterclaims to the

---

[1] The McMahons have not appeared in this action, but in the interests of simplicity, the court will nevertheless refer generally to the "defendants."

court, the motion to stay is premature as the court cannot rule on the effect of something that is not before it.

**I.     Background**

Defendants Landen Hardware LLC and Marketplace Hardware LLC are former Ace Hardware franchisees who operated in Ohio.  Plaintiff Ace Hardware alleges that it provided Landen and Marketplace with merchandise, services, and loans pursuant to a series of contracts and that Landen and Marketplace owe it nearly $900,000.00.  William Lovett, Linda Lovett, Sandra McMahan and Steven McMahan personally guaranteed some of Landen and Marketplace's financial obligations.

Ace Hardware correctly notes that the contracts at issue in this case fall into three categories:  (1) the membership agreements, (2) guaranty of credit contracts, (3) equity match loan agreements and guaranties executed with the equity match loan agreements ("equity match guaranties").

**A.     Membership Agreements**

Ace Hardware entered into membership agreements with Landen and Marketplace in May of 2006 and February of 2007, respectively.  Ace Hardware contends that Landen and Marketplace breached these agreements.  The agreements provide that "any suit brought by [Ace Hardware] against [Landen or Marketplace] to enforce any provision of this Agreement or seeking any relief in connection with or arising out of the relationship between [Ace Hardware] and [Landen or Marketplace] may be instituted in an appropriate court in the State of Illinois ...."  Amended Complaint, Ex. 6 & 7 (membership agreements), at Article V (1)(b).  They do not contain any provisions requiring disputes to be resolved via arbitration.

### B. Guaranties of Credit

William Lovett and Steven McMahan (two of Landen and Marketplace's owners) entered into guaranties of credit to, among other things, "induce [Ace Hardware] to sell merchandise and supplies and to provide services" to Landen and Marketplace. Amended Complaint, Ex. 8 & 9 (Guaranties of Credit), at 1. In the guaranties of credit, Mr. Lovett and Mr. McMahan agreed to guaranty payment for merchandise or supplies purchased by Marketplace and Landen. The guaranties of credit do not contain any provisions requiring disputes to be resolved via arbitration.

### C. The Equity Match Agreements And Equity Match Guaranties

#### 1. The Equity Match Agreements

After becoming retailers, Ace Hardware loaned money to Landen and Marketplace pursuant to equity match agreements. Amended Complaint at Ex. 3 and 5. The equity match agreements contain an arbitration provision that provides:

> ARBITRATION. THE BORROWER AND EACH OTHER LOAN PARTY IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO BINDING ARBITRATION FOR ANY MATTER OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT. THE ARBITRATION SHALL BE CONDUCTED BY A SOLE ARBITRATOR AND BE GOVERNED BY THE UNITED STATES ARBITRATION ACT. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY ANY COURT HAVING JURISDICTION THEREOF. THE PLACE OF THE ARBITRATION SHALL BE CHICAGO, ILLINOIS.

*Id*. at § 8.11(b).

The equity match agreements define "borrower" as Landen and Marketplace. *Id*. at 1, ¶ 1. They also define "loan parties" as "collectively, the Borrower and each Guarantor." *Id*. at § 1.01.

As noted by Ace Hardware, other portions of the equity match agreements refer to "each party" as opposed to the borrowers or loan parties. *See, e.g.*, *id*. at § 8.11(d) ("EACH PARTY HERETO" consents to service of process). Moreover, they define "loan document" as "this Agreement [the equity match loan agreement], the Note and any Guaranty." *Id*. at 3. The "note" is "a promissory note made by the borrower in favor of a Lender [Ace Hardware]." *Id*.

The equity match agreements also provide that the borrower and each other loan party waive objections to "THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT IN ANY US FEDERAL OR ILLINOIS STATE COURT IN CHICAGO, ILLINOIS." *Id*. at § 8.11(C). Finally, "EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY . . . IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY)." *Id*. at § 8.12

### 2. Equity Match Guaranties

The Lovetts and the McMahans all executed substantially similar equity match guaranties. Amended Complaint at Ex. 10-13. Under the equity match guaranties, Ace Hardware (defined as the lender in the agreements) agreed "to extend certain credit to Borrower [the individual guarantors], subject to the terms and conditions set forth in the Equity Match

Loan Agreement executed by and between Lender and Borrower . . . and related instruments, agreements and documents." *Id*. at 1, ¶ 2.

The equity match guaranties also provide that:

> THE GUARANTOR IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR HIMSELF/HERSELF AND HIS/HER PROPERTY, TO BINDING ARBITRATION FOR ANY MATTER OR DISPUTE ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT. THE ARBITRATION SHALL BE CONDUCTED BY A SOLE ARBITRATOR AND BE GOVERNED BY THE UNITED STATES ARBITRATION ACT. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY ANY COURT HAVING JURISDICTION THEREOF. THE PLACE OF THE ARBITRATION SHALL BE CHICAGO, ILLINOIS.

*Id*. at § 19.

Like the equity match agreements, the equity match guaranties also contain provisions that refer to "EACH PARTY." *See, e.g. id*. at §§ 21-22. In addition, the equity match guaranties contain a "waiver of venue" clause stating that:

> GUARANTOR IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT POSSIBLE PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT HE/SHE MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT IN ANY US FEDERAL OR ILLINOIS STATE COURT IN CHICAGO, ILLINOIS.

*Id*. at § 20.

### D. Ace Hardware's Federal Court Complaint

In its complaint, Ace Hardware contends that Landen and Marketplace breached the equity match loan agreements (Amended Complaint, Ex. 3 and 5) and the membership agreements (Ex. 6 and 7). It also seeks recovery against Mr. Lovett and Mr. McMahan based on

the guaranties of credit (Ex. 8 and 9) and against the Lovetts and McMahans based on alleged breaches of their personal guaranties (Ex. 10, 11, 12, and 13).

The defendants (other than the McMahans, who have failed to answer or otherwise plead) assert that they intend to raise counterclaims at the appropriate time demonstrating they suffered damages that render the agreements they executed unenforceable, or in the alternative, offset any damages allegedly incurred by Ace Hardware. In support, the defendants contend that Ace Hardware provided an inaccurate site audit report which caused them to make ill-fated investments in the Landen and Marketplace Ace Hardware stores. According to the defendants, they would not have proceeded with the Landen or Marketplace stores or signed any of the related agreements had they known the true facts about the site audit report.

## II. Discussion

### A. The Defendants' Motion to Dismiss

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-650 (1986). According to the defendants, the court should dismiss the complaint and compel arbitration based on the arbitration clauses in the equity match loan agreements and the equity match guaranties. Ace Hardware, on the other hand, contends that the equity match agreements and the equity match guaranties are one-sided and require the defendants – not itself – to submit disputes to arbitration.

The court finds that the parties' agreements support Ace Hardware's position. First, the equity match loan agreements are directed at the "borrower" and "each other loan party." Amended Complaint at Ex. 3 and 5 at § 8.11(b); *id*. at 1, ¶ 1 (defining "borrower" as Landen and

Marketplace); *id*. at § 1.01 (defining "loan parties" as "collectively, the Borrower and each Guarantor"). The plain language reading of the equity match loan agreements, therefore, requires Landen and Marketplace to arbitrate disputes, but does not require Ace Hardware to submit any disputes it might have to arbitration.

This is especially true given that other parts of the equity match loan agreements refer to "each party" to the agreements, as opposed to just the borrowers or loan parties. *See, e.g.*, *id*. at § 8.11(d) ("EACH PARTY HERETO" consents to service of process). Moreover, under the equity match agreements, the borrowers and loan parties waived objections to "THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT IN ANY US FEDERAL OR ILLINOIS STATE COURT IN CHICAGO, ILLINOIS." *Id*. at § 8.11(C). The defendants' contention that a breach of contract suit based on the equity match loan agreements cannot proceed in federal court is thus flatly contradicted by the borrowers and loan parties' consent to venue in federal court in Chicago.

Second, under the equity match guaranties executed by the Lovetts and the McMahans, the guarantors "IRREVOCABLY AND UNCONDITIONALLY SUBMIT[ED], FOR HIMSELF/HERSELF AND HIS/HER PROPERTY, TO BINDING ARBITRATION FOR ANY MATTER OR DISPUTE ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT." Amended Complaint at Ex. 10-13, at § 19. This clause is directed at the guarantors, not Ace Hardware. The equity match guaranties contain other language directed at all parties, so the court cannot ignore the narrower scope of the arbitration

clause. *See, e.g. id*. at §§ 21-22. In addition, the equity match guaranties have waiver of venue language that tracks the language in the equity match loan agreements.

The rest of the parties' agreements do not contain arbitration clauses. Thus, the documents signed by the parties do not compel Ace Hardware to litigate its claims before an arbitrator. In the interests of completeness, the court notes that the equity match loan agreements and the equity match guaranties all specify that they cover disputes about "this agreement or any other loan document." Amended Complaint at Ex. 3 and 5 at § 8.11(b); Ex. 10-13, at § 19. Thus, even if the court had accepted the defendants' arguments, the arbitration clauses at best could have only covered loan documents. Some of the parties' agreements, such as the membership agreements, are not "loan documents." Accordingly, the defendants' motion to dismiss Ace Hardware's complaint or, in the alternative, to compel arbitration, is denied as the parties' agreements do not require Ace to arbitrate its claims and even if the defendants' position about the reach of the arbitration clauses in the equity match agreements was correct (which it is not), those clauses could not have reached agreements that do not pertain to loans.

This leaves the defendants' proposed counterclaims. As noted above, the defendants agreed to arbitrate any disputes they might have arising out of or related to the equity match loan agreements, the equity match guaranties, or any other loan document. The court initially assumed that the defendants' counterclaims would track their arbitration demand. *See* Dkt. 32. This would mean that the counterclaims would be based on the equity match loan agreements and the equity match guaranties. However, the defendants' reply in support of its motion to dismiss or compel arbitration also references counterclaims under the membership agreements and "other documents." Dkt. 2.

Possible documents are: (1) Landen and Marketplace's equity match loan agreements (Amended Complaint, Ex. 3 and 5); (2) Landen and Marketplace's membership agreements (Ex. 6 and 7); (3) Mr. Lovett and Mr. McMahan's guaranties of credit (Ex. 8 and 9); and (4) the Lovetts and McMahans' personal guaranties (Ex. 10, 11, 12, and 13). The defendants agreed they would arbitrate their claims based on the equity match loan agreements, the equity match guaranties, and any other loan documents (defined as "[the equity match loan agreement], the Note and any Guaranty." Ex. 3 and 5, at 3.

This agreement clearly covers Landen and Marketplace's equity match loan agreements (Ex. 3 and 5), Mr. Lovett and Mr. McMahan's guaranties of credit (Ex. 8 and 9), and the Lovetts and McMahans' personal guaranties (Ex. 10, 11, 12, and 13). But what about Landen and Marketplace's membership agreements (Ex. 6 and 7)? The defendants argue that any dispute about the membership agreements must arise out of or be related to the equity match loan agreements and corresponding equity match guaranties. This argument, however, has no grounding in the actual language of the arbitration clauses. The clauses do not cover all disputes, with no qualification. Instead, they require arbitration of "ANY MATTER OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT," Amended Complaint at Ex. 3 and 5 (equity match agreements) at § 8.11(b). or "ANY MATTER OR DISPUTE ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT," Amended Complaint at Ex. 10-13 (equity match guaranties) at § 19.

The defendants conveniently focus on the broad phrase "any matter or dispute" but the language the parties agreed to contains a qualifier. The court simply cannot conclude that the

membership agreements, which set forth terms and conditions relating to Landen and Marketplace's then-status as Ace Hardware franchisees, arises out of the equity match loan agreements or equity match guaranties. The fact that the parties executed these documents together does not alter this conclusion. The contracts were all signed separately, and some – but not all of them – contain arbitration clauses binding the defendants. Critically, the membership agreements provide that "any suit brought by [Ace Hardware] against [Landen or Marketplace] to enforce any provision of this Agreement or seeking any relief in connection with or arising out of the relationship between [Ace Hardware] and [Landen or Marketplace] *may be instituted in an appropriate court in the State of Illinois ....*" Amended Complaint, Ex. 6 & 7 (membership agreements), at Article V (1)(b) (emphasis added). The defendants' contention that claims based on the membership agreements are arbitrable is simply unsupported by the plain language of the parties' agreements.

B. **The Defendants' Motion to Stay**

This brings the court to the defendants' final argument: that because some of their counterclaims against Ace Hardware must be arbitrated, this court should enter a stay covering this entire action until the defendants' arbitrable counterclaims are arbitrated. In support, the defendants direct the court's attention to § 3 of the Federal Arbitration Act ("FAA"), which provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with

such arbitration.

9 U.S.C. § 3.

The Seventh Circuit has rejected a reading of § 3 "that would require the district court to stay the entire case whenever it finds at least one arbitrable issue" even though "the literal language of the FAA, read in isolation, might provide some support for such a theory" as it "states that the court shall 'stay the trial of the action' – not just a part of the action – if the suit is 'brought upon' an arbitrable issue." *Volkswagen of Am. v. Sud's of Peoria*, 474 F.3d 966, 971 (7th Cir. 2007), *quoting* 9 U.S.C. § 3. Instead, the court may decide, in its discretion, to stay the entire case given that not all of the parties' claims are subject to arbitration "lest the tail wag the dog." *Id*. (internal quotations omitted).

Like all rules, however, there is an exception as the court must consider whether proceeding with non-arbitrable issues while arbitrable issues are arbitrated presents a risk of inconsistent rulings, "the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." *Id*. at 972 (internal quotations omitted). "When these factors weigh in favor of staying the entire action pending arbitration, the district court may abuse its discretion in allowing the nonarbitrable issues to proceed absent a stay. In many instances, moreover, district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court." *Id*.

The court cannot effectively balance these factors as the defendants have outlined their proposed counterclaims with broad brush strokes but – given the procedural posture of this case

– have not actually filed counterclaims. Accordingly, the defendants' motion to stay proceedings pending arbitration is denied without prejudice.

**III.    Conclusion**

For the reasons set forth above, the motion to dismiss or stay filed by Landen, Marketplace, and the Lovetts [Dkt. 25] is denied.  Specifically, the motion to dismiss Ace Hardware's complaint because Ace Hardware's claims are all subject to arbitration is denied, and the defendants' motion to stay this action is denied without prejudice as premature as the defendants have not yet filed counterclaims and the court cannot rule on the effect of something that is not before it.  Landen, Marketplace, and the Lovetts shall file an answer and any counterclaims by March 25, 2011.  If they wish to do so, they must renew their motion to stay at that time.  In addition, as the McMahans have failed to answer or otherwise plead, the clerk shall enter default against them pursuant to Fed. R. Civ. P. 55(a).  If Ace Hardware wishes to pursue its claims against the McMahans, it should file a motion for default judgment by March 25, 2011. This matter is set for a status hearing on March 29, 2010, at 11:00 a.m.  The parties should notice any motions for presentment on this date.

DATE:   February 24, 2011 _____
Blanche M. Manning
United States District Judge